THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* LUIS PÉREZ ESCOBAR, Defendant and Appellant.

No. CR-63-334.     Decided October 6, 1964.

*Ramón Morán Loubriel,* attorney designated by the Supreme Court to offer legal assistance to defendant on appeal. *J. B. Fernández Badillo, Solicitor General,* and *Peter Ortiz, Assistant Solicitor General,* for The People.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Rigau, and Mr. Justice Dávila.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

Appellant was convicted of driving a motor vehicle under the influence of intoxicating liquor and sentenced to six months in jail, and his driver's license was suspended for a period of one year.

The brief for appellant, prepared by the attorney designated by this Court to represent him in this appeal and which reveals a painstaking study of the questions raised, assigns the commission of three errors. The first one is as follows:

"The trial court erred in evaluating and weighing the evidence since the latter is conflicting and insufficient to establish the commission of the offense beyond a reasonable doubt."

He maintains that the prosecution evidence is insufficient to establish that defendant was in a drunken condition when he was driving the vehicle. This contention calls for a summary of the evidence.

In the afternoon of December 3, 1961, while policeman Santos García and Sergeant Navarro were patrolling the Isidro Cora housing project of Arroyo, and as they came out in the direction of Morse Street, defendant's car over-

took them near the corner. As they reached the corner, Alejandro Cora and a girl said to them that "that car going there had collided with the car of her father which was on the street." According to Cora's testimony, the vehicle operated by defendant was the one which collided with the automobile belonging to the girl's father. The police pursued defendant. Policeman García headed the jeep in one direction and the sergeant went on foot in another direction. They found defendant's vehicle in front of a house in Isidora Cora housing project. About 5 or 10 minutes later, according to the testimony of policeman García, or 15 or 20 minutes, according to the sergeant, they found defendant on the street of the housing project where his vehicle was standing. García testified: "He was completely drunk, he could not hold himself up, staggered, the eyes (sic), he talked incoherently, could hardly talk, was completely drunk." They took him to police headquarters. He was seen there by Cora, who testified that defendant was "quite drunk," which means that apparently he was intoxicated and zigzagged as he walked. Defendant refused to have a blood sample taken.

The defense evidence tended to establish that defendant consented to have a urine sample taken, but that he could not void a sufficient amount for analysis. It also tended to show that the defendant was not driving the vehicle either before or after the accident, but that it was operated by another person named Carmelo Rosario, who did not testify at the trial; that after the accident they parked in front of the house of Eduvigis Lebrón in the housing project and the driver of the vehicle waited for the owner of the car because he was not home; that defendant went into the house of Eduvigis Lebrón and each one had three or four beers and a half-pint of rum; that about three-quarters of an hour later they came out and did not find the vehicle nor the driver; that thereupon defendant went to police headquarters

where he was detained because he was driving a vehicle in a drunken condition; that they took him to the hospital and he refused to have a blood sample taken because he had not committed any offense, that he tried to give a urine sample but the amount voided was insufficient.

In discussing the insufficiency of the evidence, appellant argues: "Since the presumption of continuity established by subd. 3, 32 L.P.R.A. § 1887, cannot arise since it does not apply retrospectively, only defendant's intoxication at the time of the arrest may be considered as circumstantial evidence of his condition at the time of the accident. See *State v. Hamer*, 274 N.W. 885 (Iowa 1937). There being no other evidence to buttress that inference, and there being, on the contrary, uncontroverted testimony that defendant had access to liquor, that he imbibed liquor, and also evidence that a substantial period of time elapsed between the accident and the arrest, it is evident that the evidence offered by The People is insufficient to establish that defendant was operating an automobile under the influence of intoxicating liquor." He maintains further that although the rule in some jurisdictions is that circumstantial evidence should rule out any reasonable hypothesis of defendant's innocence, the evidence necessary to establish the offense beyond a reasonable doubt both in those jurisdictions and in Puerto Rico is the same.

■ The doctrine that circumstantial evidence should be not only consistent with defendant's guilt but also inconsistent with any other reasonable hypothesis of innocence was expressly abandoned in our jurisdiction in deciding the case of *People v. Bonilla*, 78 P.R.R. 144, 153 (1955). Since then the problem narrows down to a determination of whether the evidence—whether circumstantial or oral—establishes defendant's guilt beyond a reasonable doubt. What we must decide in the present case is precisely whether the evidence is sufficient to establish beyond a reasonable doubt that on

the date stated in the information appellant was driving a motor vehicle under the influence of intoxicating liquor.

It is correct that there is no direct evidence on defendant's drunken condition at the time of the accident with the exception of the testimony of witness Cora, who when asked on defendant's condition when he was driving the automobile, answered: "He was quite drunk." Although such statement would not establish by itself defendant's drunken condition at that moment, we believe that the other evidence does.

■ Defendant was arrested from 5 to 20 minutes after the occurrence of the accident. It does not seem that the place where he was arrested was far from the scene of the accident, since the police sergeant headed on foot to that place. At the time of his arrest defendant was completely drunk, could not hold himself up, staggered, talked incoherently, could hardly talk, was completely drunk, according to the testimony of a prosecution witness. At police headquarters to which he was taken he was seen by witness Cora "quite drunk," in apparent drunken condition. Defendant maintains, however, the he imbibed liquor after the accident and that the evidence in this connection was not controverted. Although it is true that no witness testified that defendant had not imbibed liquor between five and six in the afternoon of that day, namely, after he was seen driving a motor vehicle, it cannot be asserted that the trial judge was for that reason bound to believe that such fact was true and that defendant was telling the truth. In the first place, defendant maintained that he had been taking liquor for about 45 minutes. This would indeed point to the probability of his drunken condition at the time of his arrest; but the fact is that, as to the time elapsed between the accident and the arrest, the defense evidence was controverted by the prosecution evidence which established the lapse of time between 5 and 20 minutes. Defendant denied that he operated the motor vehicle; he denied that he was arrested in

Isidro Cora housing project and taken to police headquarters; he denied that he kept going and did not stop after the accident. All this evidence is in conflict with the prosecution evidence which undoubtedly was believed, correctly in our opinion, by the trier of facts. The defense evidence thus discredited, the judge had reason to disbelieve that part which sought to establish that defendant had access to and imbibed intoxicating liquor after the accident. The evidence presented in the case is sufficient to establish beyond a reasonable doubt that appellant was driving a motor vehicle under the influence of intoxicating liquor, as charged in the information.

The case law cited by appellant does not lead to a different conclusion since it is distinguishable, as to the facts therein, from those in the present case. In *Bland* v. *City of Richmond*, 55 S.E.2d 289, the doctrine applied was that circumstantial evidence does not rule out any other hypothesis of defendant's innocence. A police officer testified that he came up a few minutes after an accident and noticed that the car was empty, and that a few minutes thereafter the defendant was brought to the scene by another police officer, and he admitted that he was driving the car. The court stressed the fact that the police did not know when the accident occurred, although it thought that it had occurred only a few minutes before. It also considered the fact that the agent who brought the defendant to the scene of the accident did not testify. The court concluded that the evidence was not inconsistent with the hypothesis that defendant had taken liquor after the accident.

In *Fowlkes* v. *Commonwealth*, 74 S.E.2d 683, the only prosecution witness, a police officer, testified that he did not know what time the accident occurred, nor could say what the defendant's condition was at that time.

In *Coffey* v. *Commonwealth*, 116 S.E.2d 257, the rule of the *Bland* case on circumstantial evidence was also applied.

In *Gamble* v. *State*, 60 So.2d 696, the only prosecution witness had not seen defendant operating the automobile. The State did not meet the burden of proof resting upon it that after the accident and until his arrest defendant had no access to intoxicating liquor.

In *Blevins* v. *State*, 90 So.2d 98, the same rule was followed to the effect that evidence on defendant's intoxication some time after the alleged offense (driving a vehicle in a drunken condition) is not admissible, unless it is first established that defendant had no access to intoxicating liquor in the meantime.

In *City of Columbus* v. *Samuels*, 174 N.E.2d 280, the only prosecution witness did not see defendant driving the vehicle, and could not fix the time elapsed between the accident and his arrest.

We agree with appellant that since § 8 of Act No. 141 of 1960 (9 L.P.R.A. § 1041) provides that it shall be unlawful for any person who is under the influence of intoxicating liquor to drive or operate any motor vehicle, but in order that there be an offense it is necessary to establish defendant's drunken condition when driving or operating the vehicle. This does not mean, however, that evidence on defendant's subsequent drunken condition be always insufficient to establish beyond a reasonable doubt his drunken condition when driving the vehicle. The judge is not bound by any rule to believe the testimony of a defendant to the effect that he imbibed intoxicating liquor after he ceased driving the vehicle if his testimony and that of the other defense witnesses are not worthy of credit as being in open conflict with the testimony believed by the trier, and also because of the improbability that in the short period of 5 to 20 minutes he imbibed a sufficient amount of intoxicating liquor to become "completely drunk," according to the description of his condition in the prosecution evidence. Since the defendant as well as his witness Eduvigis Lebrón did

not tell the truth on essential aspects of their testimony, the trier was justified in concluding that they had not told the truth in any aspect and in rejecting the version that defendant had imbibed intoxicating liquor after the accident. Section 524 of the Code of Civil Procedure (32 L.P.R.A. § 1679); *People* v. *Nieves*, 57 P.R.R. 769 (1940); *Rivera* v. *Zavala*, 43 P.R.R. 100 (1932); *The People* v. *Español*, 16 P.R.R. 203 (1910).

And it is clear that the rest of the evidence produces the moral conviction, beyond a reasonable doubt, that appellant in this case drove a motor vehicle in a drunken condition and, consequently, that he violated § 8 of Act No. 141 *supra*, and neither the evaluation nor the weighing of the evidence made by the trial court are erroneous.

■ In the second assignment appellant maintains that the trial court erred in not taking the date of conviction as the date for commencement of the compulsory suspension of the driver's license.

In decreeing the suspension of the license for a period of one year, the trial court held that that period starts to run as of the date of defendant's release after serving six months in jail. That pronouncement was not made a part of the judgment. The judgment, insofar as it decreed the suspension of appellant's driver's license for a period of one year, is correct. However, if it were to be understood that it was the trial court's intention to incorporate that pronouncement in the judgment, we believe that the same was erroneous.

Section 5-802 of the Vehicle and Traffic Law (9 L.P.R.A. § 1042(d)) provides: "In the case of a first conviction the court shall, in addition to the above penalties, decree the suspension of the driver's license for a period of not less than one (1) year nor more than two (2) years, and in case of recidivism, the revocation shall be permanent."

This provision is silent on the date on which the period of suspension of the license starts to run; but, as correctly alleged by appellant, the study of other provisions of the same Act leads to the conclusion that the period is counted as of the date of conviction. In this connection, § 11-102 (a) (9 L.P.R.A. § 1642) provides: "Whenever under the provisions of this chapter or its regulations a court suspends or revokes the license of a person authorized to drive motor vehicles, the judge shall seize the license of the affected driver and the clerk of the trial court shall forward same to the Secretary together with a certified copy of the judgment, containing a clear statement of the terms of the suspension or revocation."

In the case of persons not authorized to drive motor vehicles, § 11-103 (9 L.P.R.A. § 1643) provides: "Where a person is convicted of an offense which, had he been a licensed driver, would have entailed suspension of his license, the Secretary shall not issue to said person a driving license for a period equal to the one such suspension would have entailed, *reckoning from the date of the conviction*." (Italics ours.)

The starting point for computing the period of suspension should not be different in the case of a convict authorized to drive, since the purpose of the Act in both cases is the same, to protect the public, temporarily or permanently, against the risk which a driver of motor vehicles under the influence of intoxicating liquor represents on the highways. The driver's license of a convict authorized to drive is suspended for a specified period, and a convict not authorized to drive is denied authorization (nonissuance of license) to drive for a like period. Therefore, since the purpose of the Act is the same in both cases, there would be no justification for establishing a distinction in the manner of computing the period of suspension in order to favor an unauthorized driver.

█ The third error assigned is the imposition of such a severe penalty on appellant.

Although the penalty of six months in jail is within the limits fixed by law—10 days to one year in jail—we believe that, in view of the concurring circumstances and particularly that the accident in this case was not serious, since it involved a minor collision with a vehicle parked on a street, the only damage being the breakage of the glass of a small light, the penalty shall be reduced to 15 days in jail and, as thus modified, the judgment on appeal will be affirmed.