## Richmond

## RICKY LAMONT JONES

v.

## COMMONWEALTH OF VIRGINIA

No. 0832-93-2

Decided December 13, 1994

COUNSEL

David P. Baugh, for appellant.

Marla Lynn Graff, Assistant Attorney General (James S. Gilmore, III, Attorney General, on brief), for appellee.

OPINION

**ELDER, J.**—Ricky Lamont Jones appeals his conviction for distribution of cocaine in violation of Code § 18.2-248, for which he received enhanced punishment as a "second or subsequent conviction." The events providing the basis for this charge occurred on June 14, 1991, but appellant was not indicted and convicted until 1993. The predicate offense used to enhance Jones's punishment stemmed from an incident which occurred on July 10, 1991, and resulted in his conviction for possession of cocaine with intent to distribute on December 12, 1992. The predicate offense and conviction occurred *after* Jones's commission of the offense at issue in this case but *prior to* his indictment, trial, and conviction for that offense.

In this expedited appeal from the second conviction, appellant raises four issues for our consideration. First, he contends that reversal of the predicate conviction during the pendency of this appeal entitles him to dismissal of this, the subsequent, conviction. He also contends that the trial court erred (1) in holding that Code § 18.2-248(C) permitted him to be tried for a second offense when the underlying conviction was rendered after the instant offense; (2) in admitting the testimony of a purported police informant that he did not remember participating in the sale at issue; and (3) in admitting the cocaine into evidence despite his objection to the proof of chain of custody. Because we reverse and dismiss appellant's conviction on issue (3), it is not necessary to address the other issues raised by appellant.

I.

On June 14, 1991, Special Agent Barrett arranged for confidential informant Floyd Langhorne to purchase two ounces of cocaine. At about 3:00 p.m, while accompanied by Officer Reed, Barrett frisked Langhorne, drove him to an unspecified location west of the McDonald's Restaurant at 501 West Broad Street that was to be the site of the purchase, and gave him $2,500 with which to make the purchase. Langhorne returned to the police vehicle at 3:20 p.m. with two plastic bags of cocaine. Special Agent

Barrett gave the cocaine to Special Agent Blanton, and appellant stipulated to the chain of custody of the cocaine from that point forward.

Detectives Pence and Milhalcoe monitored Langhorne's activities in and around the McDonald's parking lot. From the top of a nearby building, Pence saw Langhorne walk through an alley and into the McDonald's parking lot. There, Langhorne met up with appellant, and the two walked to a car, which they entered. Two minutes later, Langhorne got out of the car, appellant drove away, and Langhorne walked back toward where Barrett and Reed were waiting. Pence photographed these events. From a car in a nearby parking lot, Detective Milhalcoe saw appellant drive alone in a car into the McDonald's parking lot. Although Milhalcoe saw Langhorne and appellant meet in the parking lot, he testified that they walked "momentarily" out of his sight. When they were out of his sight at the front of the restaurant, he could not see whether Langhorne went into the restaurant or met other persons. He also testified that other restaurant patrons were in the area. Appellant and Langhorne reappeared and entered appellant's car. Langhorne got out of the car after a "short time," appellant drove away, and Langhorne walked back toward where Barrett and Reed "were supposed to be." Neither Pence nor Milhalcoe testified that they actually saw Langhorne rejoin Barrett and Reed at their vehicle, and the evidence failed to show that the line of sight of Pence or Milhalcoe overlapped the line of sight of Barrett or Reed. Thus, the evidence fails to prove that Langhorne was under police surveillance at all times.

Appellant was subsequently indicted for distribution of cocaine as a second or subsequent offense. On March 15, 1993, prior to trial, appellant moved to have the charge reduced to a first offense. He argued that Code § 18.2-248(C) was ambiguous as to whether it permitted conviction of a second offense where the underlying conviction was rendered after the second offense had been committed but before it had been prosecuted. The trial court denied appellant's motion.

At trial on April 19, 1993, but outside the presence of the jury, the Commonwealth called Langhorne as a witness. Langhorne claimed he had been ill and denied having any recollection of the events for which appellant was on trial. Appellant objected to the admission of Langhorne's testimony on the ground that it was

irrelevant and that allowing him to offer such testimony was prejudicial. Over appellant's objection, Langhorne testified before the jury that he had sustained head injuries and could not remember any of the events surrounding the purported transaction between him and appellant. He also refused to identify himself in the photographs of the transaction.

The Commonwealth also introduced evidence that appellant had been convicted on December 21, 1992 of possession of cocaine with intent to distribute.[1]

Appellant twice moved to strike "as to chain of custody," arguing that the Commonwealth's evidence failed to show that the substance Langhorne turned over to Special Agent Barrett and Officer Reed was received from appellant. The Commonwealth responded that this objection related to the sufficiency of the evidence, which was a jury question, rather than to its admissibility. Appellant's motions were denied, and the jury found him guilty of second-offense possession/distribution. Appellant "re-urge[ed] [his] motions" and moved "to set aside the verdict as contrary to the law and the evidence, particularly re-urging the dismissal issue on the second and subsequent, the chain of custody issue, in particular." The court again denied his motions.

On May 3, 1994, after appellant had noted this appeal, his predicate conviction was reversed by a panel of this Court. *Jones v. Commonwealth*, 18 Va. App. 329, 443 S.E.2d 820 (1994).

## II.

Following the filing of his brief on appeal and the reversal of his predicate conviction, appellant moved this Court either to expedite his appeal as permitted under Rule 5A:13 or to summarily dismiss the conviction. Appellant admits that Rule 5A:13 provides no authority for summary dismissal, and he cites no other authority which would support such action. Because appellant posed his request for relief in the alternative, and this Court has granted the request for an expedited appeal, we do not consider the propriety

---

[1] Although not explained to the jury at trial, it appears that the conviction for possession with intent to distribute rendered on December 21, 1992 was based on the third in a series of transactions involving appellant. The first transaction occurred on June 11, the second on June 14, and the third on July 10. It was the conviction for the third transaction that served as the predicate offense for the conviction at issue in this appeal.

of summary dismissal.

### III.

Appellant contends that the cocaine should not have been admitted into evidence because the Commonwealth failed to prove the chain of custody. He argues that the evidence was insufficient as a matter of law to show that Langhorne received the cocaine from appellant. The Commonwealth argues that because appellant failed to object specifically to the sufficiency of the evidence to support the conviction, he failed to preserve this issue for appeal. We hold that the issues of sufficiency of the evidence and chain of custody are inextricably linked and were preserved by appellant's motions "to set aside the verdict as contrary to the law and the evidence, . . . the chain of custody issue, in particular."

We also hold that the evidence was insufficient to support appellant's conviction for distributing cocaine because the Commonwealth failed to prove beyond a reasonable doubt that the cocaine Langhorne turned over to Special Agent Barrett had been obtained from appellant. The evidence linking appellant to the drugs in this case was purely circumstantial and speculative. "While a conviction may properly be based on circumstantial evidence, suspicion or even probability of guilt is not sufficient. There must be an unbroken chain of circumstances proving the guilt of the accused to the 'exclusion of any other rational hypotheses and to a moral certainty.'" *Gordon v. Commonwealth*, 212 Va. 298, 300, 183 S.E.2d 735, 737 (1971) (quoting *Brown v. Commonwealth*, 211 Va. 252, 255, 176 S.E.2d 813, 815 (1970)). Proof of a mere opportunity to commit an offense provides only "the suspicion that the defendant may have been the guilty agent; and suspicion is never enough to sustain a conviction." *Simmons v. Commonwealth*, 208 Va. 778, 783, 160 S.E.2d 569, 573 (1968). *See also Powers v. Commonwealth*, 211 Va. 386, 389, 177 S.E.2d 628, 630 (1970).

These principles resulted in reversal of a conviction for possession of heroin in *Gordon*. In that case, the defendant was seen running from the police with a manila envelope in his hands. Detective Harding, the officer in pursuit, lost sight of appellant for three or four seconds when appellant ran between two buildings, and when appellant emerged, he no longer had the envelope in his hands. Harding then arrested appellant but was unable to find the

envelope. Officer Vann, who was searching the area a short time later, found an envelope which Harding identified as the same size, shape, and color as the envelope he had seen in appellant's possession. However, Vann acknowledged that the area in which he found the envelope was "fairly busy" and that he did not know how the envelope happened to be where he found it. The envelope contained narcotics paraphernalia with traces of heroin on them, all of which were admitted into evidence. On appeal, the Supreme Court of Virginia reversed appellant's conviction because "there was a [fatal] break in the chain of evidence. No witness was produced who saw Gordon dispose of the manila envelope which he carried . . . [and] [t]he envelope containing narcotics 'works' was found adjacent to a busy public street." *Gordon*, 212 Va. at 300-01, 183 S.E.2d at 737.

The chain of circumstantial evidence in this case was similarly flawed because the jury was required to speculate as to a critical event. No witness saw the informant when he was at the front of the restaurant. This incident occurred on the premises of a public restaurant and on public streets where other persons were gathered. Although several witnesses saw appellant and Langhorne get into appellant's car, no one saw anything change hands, and the Commonwealth failed to provide sufficient evidence of Langhorne's whereabouts from the time he was searched by Special Agent Barrett until he returned to the police vehicle with the cocaine. "Because of the fatal gap in the circumstantial evidence," *id.* at 301, 183 S.E.2d at 737, the Commonwealth failed to exclude other reasonable hypotheses concerning how Langhorne came into possession of the drugs.

For these reasons, we reverse and dismiss appellant's conviction.

*Reversed and dismissed.*

Benton, J., and Willis, J., concurred.